**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| REBECCA GALLOGLY, | § | |
| | § | |
| Plaintiff, | § | |
| V. | § | |
| | § | A-18-CV-00571-RP-ML |
| ATTORNEY GENERAL OF THE | § | |
| UNITED STATES; THE U.S. | § | |
| ATTORNEY'S OFFICE, WESTERN | § | |
| DISTRICT OF TEXAS – AUSTIN; THE | § | |
| U.S. DEPARTMENT OF HOUSING AND | § | |
| URBAN DEVELOPMENT; THE STATE | § | |
| OF TEXAS; TRAVIS COUNTY | § | |
| CRIMINAL COURT; TRAVIS COUNTY | § | |
| DISTRICT ATTORNEY'S OFFICE; THE | § | |
| CITY OF AUSTIN; CAPITAL AREA | § | |
| PRIVATE DEFENDER SERVICE; 2013 | § | |
| TRAVIS HEIGHTS, LP; EUREKA | § | |
| MULTIFAMILY GROUP; DOMINIUM | § | |
| APARTMENTS; MICHAEL BURKE, | § | |
| ATTORNEY, | § | |
| | § | |
| Defendants. | § | |

**ORDER ON *IN FORMA PAUPERIS* STATUS AND**
**REPORT AND RECOMMENDATION ON THE MERITS OF THE CLAIMS**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

The Magistrate Court submits this Report and Recommendation to the United States

District Court pursuant to 28 U.S.C. § 636(b) and Rule 1 of Appendix C of the Local Court

Rules of the United States District Court for the Western District of Texas, Local Rules for the

Assignment of Duties to United States Magistrate Judges.

Before the court is Plaintiff's Application to Proceed *In Forma Pauperis*. Dkt. #2.

Because Plaintiff is requesting permission to proceed *in forma pauperis*, this court must review

and make a recommendation on the merits of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e).

## I.   REQUEST TO PROCEED *IN FORMA PAUPERIS*

The court has reviewed Plaintiff's financial affidavit and determined Plaintiff is indigent and should be granted leave to proceed *in forma pauperis*. Accordingly, the court hereby **GRANTS** Plaintiff's request for *in forma pauperis* status. The Clerk of the Court shall file the complaint without payment of fees or costs or giving security therefor pursuant to 28 U.S.C. § 1915(a). This indigent status is granted subject to a later determination the action should be dismissed if the allegation of poverty is untrue or the action is found frivolous or malicious pursuant to 28 U.S.C. § 1915(e). Plaintiff is further advised, although Plaintiff has been granted leave to proceed *in forma pauperis*, a court may, in its discretion, impose costs of court at the conclusion of this lawsuit, as in other cases. *Moore v. McDonald*, 30 F.3d 616, 621 (5th Cir. 1994).

As stated below, this court has made a § 1915(e) review of the claims made in this complaint and is recommending Plaintiff's claims be dismissed without prejudice under 28 U.S.C. § 1915(e). Therefore, service upon Defendants should be withheld pending the District Court's review of the recommendations made in this Report. If the District Court declines to adopt the recommendations, then service should be issued at that time upon Defendants.

## II.   REVIEW OF THE MERITS OF THE CLAIM

### A.   Factual Background

Rebecca Gallogly, Ph.D. ("Dr. Gallogly") brings this 140 page Complaint against a multitude of defendants under 28 U.S.C. § 1331 and 42 U.S.C. § 1983.[1] Dkt. #1 ("Compl."). Her Complaint describes a litany of grievances stemming from a criminal trespass charge and her participation in the Section 8 housing voucher program at Lucero Apartments.

---

[1] Dr. Gallogly filed a Motion to Amend Complaint to reflect she was filing suit under § 1331 and § 1983. Dkt. #10.

On August 4, 2015, Dr. Gallogly was arrested for criminal trespass on the campus of the University of Texas at Austin. Compl. at 8. Dr. Gallogly alleges this arrest was illegal because she was "peaceably seeking an appointment with the Office of the President" to address a civil rights complaint and advocate for administrative change within a postdoctoral office. *Id*. Michael Burke ("Burke") from the Capital Area Private Defender Service ("CAPDS") was appointed to represent her for the proceedings. *Id*. Dr. Gallogly alleges Burke was ineffective for failing to assert a "legitimate business" defense to the charge. *Id*. at 9. She also alleges the Travis County Criminal Court judge acted "curtly and with an air of haughty and spiteful righteous indignation" and did not give her an opportunity to provide evidence during a pretrial motion to dismiss hearing. *Id*. at 10. CAPDS arranged a competency evaluation for Dr. Gallogly, which she alleges was dubiously timed during her menstruation. *Id*. at 10. Furthermore, she alleges that CAPDS's treatment of her during these evaluations was degrading and caused her emotional anguish. *Id*. at 11.

While her criminal trespass case was pending, Eureka Multifamily Group ("Eureka"), the management company for Lucero Apartments ("Lucero"), contacted Dr. Gallogly on July 5, 2016 to inform her a Section 8 apartment was available at Lucero. *Id*. at 12. She was initially given one week to claim the unit, but Eureka informed her that any open criminal charge must be resolved first and gave her an extension until July 22 to resolve the issue. *Id.* at 13–14.

Dr. Gallogly's criminal trespass case was set for a hearing on July 20, 2016. *Id*. at 11. Although she wanted to go to trial, she was advised a trial could not be completed in time to comply with Eureka's July 22 deadline. *Id*. at 14. Feeling coerced, Dr. Gallogly agreed to a plea bargain with a probationary term to resolve the case by Eureka's deadline.[2] *Id*. at 14.

---

[2] The probationary term was deferred adjudication community supervision. *See* Dkt. #1-2 at 8.

Subsequently, Dr. Gallogly contends she was able to get her community supervision dismissed using evidence she had previously provided to Burke.[3] *Id*. at 53. However, she is still prohibited from going onto the campus of the University of Texas at Austin or emailing anyone there. *Id*. at 55.

With the criminal charge resolved, Dr. Gallogly was able to move into Lucero. Since moving to Lucero, Dr. Gallogly alleges Lucero's living conditions have caused her "chronic and unrelenting psychological stress." *Id*. at 15. Dr. Gallogly describes issues with her neighbors, with Eureka and its successor Dominium Apartments ("Dominium"),[4] with the building itself, and with access to the building. She alleges incidents of violence "skyrocketed" after the on-foot patrolman at Lucero was replaced with a car patrol service. *Id*. at 16. Dr. Gallogly states she is fearful of leaving her apartment and is "virtually imprisoned in her apartment." *Id*. at 17-21. She reports calling the Austin Police Department's 311 or 911 number nearly 150 times regarding incidents at Lucero. *Id*. at 15.

Dr. Gallogly also alleges chronic sleep deprivation from unrelenting noise due to Lucero management's failure to enforce its regulations, children playing unattended, residents playing music loudly from their cars, purposeful noise-making from her above-the-floor neighbor, frequent landscaping, and excessive fire alarm testing. *Id*. at 23–29. Dr. Gallogly also describes

---

[3] Although Dr. Gallogly pleads that she "was able to get her Community Supervision dismissed after Mr. Burke was removed from her case, and using much of the evidence Plaintiff provided to Mr. Burke while he was representing her," Compl. at 53, the Attachment she relies on does not support this, *see* Compl. at Att. 2. Attachment 2 is her pro se Motion to Terminate Community Supervision and the Order Early Releasing Defendant From Deferred Adjudication. The Motion itself includes no evidence, and the court Order merely states that she "has complied with the terms and conditions of the Deferred Adjudication and that it is in the best interest of society and the Defendant that an Early Discharge be granted." Compl. at Att. 2.

[4] Lucero is owned by 2013 Travis Heights LP, which Dr. Gallogly refers to as "Property Owner." Compl. at 7. Dr. Gallogly alleges that 2013 Travis Heights, LP is liable for all of the actions of Eureka and Dominium. *Id*. at 88. The court will refer to Eureka, Dominium, and 2013 Travis Heights, LP collectively as the "Lucero Defendants."

issues with poor maintenance.  *See id.* at 31–32 (poor trash management and trash being strewn around the complex); *id.* at 32, 34 (management being unresponsive to maintenance requests).

Dr. Gallogly also complains that Lucero's premises are "unreasonably restrictive" and restrict her "freedom of movement" in a way that threatens her safety. *Id.* at 47. Dr. Gallogly notes that the shortest path to exit the complex "involves the use of a very busy and exhaust-filled street." *Id.* Emergency exits, by contrast, lead to less busy streets.  *Id.* The ban on the use of emergency exits adds three minutes to exit the complex, which Dr. Gallogly alleges is a problem because:

> Plaintiff is not always feeling good or not menstruating, and obtaining flu medicine or tampons with added travel time and exhaust to and from the grocery store is a physical burden.
> Plaintiff finds groceries are heavy, and while she can manage backpacking her groceries . . . she is not a body builder, and she wishes to not experience permanent spinal compression or something crazy like that.

*Id.* at 48–49. Dr. Gallogly states the restriction on movement has led to her being unable to escape hostile situations or avoid problematic people. *Id.* at 49. Moreover, it has limited her access to free yoga. *Id.* at 108.

Dr. Gallogly alleges she has been subjected to an "overwhelming paperwork burden" by the Lucero Defendants.  She complains of constant paperwork requests beginning with her initial Section 8 income certifications and continuing to her lease renewals, her Section 8 income re-certifications, and the Lucero Defendants' failure to provide the correct or accurate paperwork and refusal to print out the residents' annual recertification documents. *Id.* at 36–37, 39–47. Additionally, Dr. Gallogly alleges they improperly calculated her income and overcharged her for her water bill. *Id.* at 29-31, 33, 40, 81.

## B.      Causes of Action

Asserting federal question jurisdiction and Section 1983, Dr. Gallogly brings a host of claims against those involved with her criminal trespass charge, the Lucero Defendants, and multiple government entities. She alleges deprivations her of rights guaranteed by the Equal Protection Clause, the Due Process Clause, the Sixth Amendment, and the Paperwork Reduction Act (the "PRA").  She also asserts violations of her rights to work, to free choice of employment, to protection from unemployment, and to freedom from degrading treatment as guaranteed under the United Nations Declaration of Human Rights ("UNHDR") and violations of her "domestic tranquility" and "general welfare" rights derived from the preamble of the Constitution.

Related to her criminal trespass charge, Dr. Gallogly alleges that Burke, CAPDS, and the Travis County Criminal Court violated her Fifth Amendment due process rights and her Sixth Amendment rights by denying her effective counsel and a speedy trial and by accepting her coerced plea bargain.  She also alleges CAPD violated her equal protection rights by forcing her undergo a competency evaluation during her menstrual cycle.  Relatedly, she alleges the United States violated her rights by failing to provide for extensions of such evaluations.  She alleges the Travis County District Attorney's office violated her freedom of movement rights by barring her from entering the University of Texas's campus.  She alleges the State of Texas's expunction statute and the United States'[5] lack of a national expunction standard violate her due process rights.

Dr. Gallogly alleges the Lucero Defendants violated her due process and equal protection rights by basing her housing eligibility on her open arrest charge, having ineffective and burdensome procedures for resolving maintenance and other complaints, enforcing policies that

---

[5] Although she listed the U.S. Attorney's Office, the Western District of Texas, and the Attorney General of the United States, U.S. Department of Justice, as separate parties, Plaintiff refers to these entities and the United States interchangeably. *See* Compl. at 6.

restrict her freedom of movement into and out of the apartment complex, retaliating against her for making various complaints, and hiring a less qualified candidate than Dr. Gallogly to work in the office.[6]  Dr. Gallogly also alleges they wrongly required her to pay an unmetered water bill, miscalculated her utility bills and her income, and misrepresented HUD regulations, and they violated by Paperwork Reduction Act by overwhelming her with paperwork.  Dr. Gallogly contends their treatment of her also violated the Texas Penal Code and the Texas Property Code. Finally, as with other defendants, Dr. Gallogly alleges the Lucero Defendants violated her rights under the UNDHR and the preamble to the Constitution.

Dr. Gallogly also claims her rights have been deprived by various state, local, and federal governments' and government agencies' failures to enact legislation or regulation. Dr. Gallogly alleges the Department of Housing and Urban Development ("HUD") violated the equal protection, domestic tranquility, general welfare, and due process rights of residents participating in HUD programs by failing to mandate several policies that would improve their living conditions.  *Id*. at 61–62, 64–65, 67–73, 75–79, 84.  She also faults the State of Texas, HUD, the City of Austin, and the Environmental Protection Agency ("EPA") for not creating a better environment through regulation or putting in place better public safety laws. *Id*. at 62–63, 72. Finally, Dr. Gallogly states her opposition to a recently proposed Congressional bill titled *Making Affordable Housing Work Act of 2018*. *Id*. at 52.

### C.    Standard of Review

Because Plaintiff has been granted leave to proceed *in forma pauperis*, the court is required by statute to review the Complaint. A district court "shall dismiss" a case brought *in forma pauperis* at any time if the court determines the action "(i) is frivolous or malicious; (ii)

---

[6] Dr. Gallogly does not allege that someone outside of her protected group was hired or that she has received an EEOC right to sue letter.

fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). A complaint is frivolous, if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, (1989); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327–28.  Pro se complaints are liberally construed in favor of the plaintiff. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Coleman v. Lincoln Parish Det. Ctr.*, 858 F.3d 307, 309 (5th Cir. 2017). However, pro se status does not offer a plaintiff an "impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

A plaintiff's complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While pro se complaints are held to less stringent standards than those drafted by lawyers, pro se plaintiffs must still "plead factual allegations that raise the right to relief above the speculative level." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

Federal courts can only adjudicate cases and controversies that come before them. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). The doctrine of standing enforces the case-or-controversy requirement.  *Id.*  To have standing before a federal court, (1) a plaintiff must have suffered an

actual or imminent injury in fact, (2) there must be a causal connection between the injury and the conduct complained of, and (3) the injury must be redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

A Section 1983 claim requires (1) a deprivation of a federal right and (2) the alleged deprivation be caused by a person acting under color of state law. *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). To bring a Section 1983 claim, a plaintiff must first identify the deprived right as "one secured by the Constitution and laws." *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991). Section 1983 does not create rights on its own, but provides a cause of action for rights protected by the United States Constitution and federal laws. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617-18 (1979). Rights protected by state law are not covered by Section 1983. *Baker*, 443 U.S. at 145–46.

**D.    Discussion**

As described above, Dr. Gallogly pleaded a plethora of claims against numerous defendants.  However, as discussed below, many of her claims allege violations of "rights" that are not recognized in federal courts, namely her UNDHR claims, her overwhelming paperwork claims, and her preamble claims.  Additionally, she has sued the Lucero Defendants under Section 1983, but they are not state actors. For the reasons given below, her remaining equal protection claims, due process claims, Sixth Amendment claims, and claims to compel legislation and regulation also fail to provide her a basis for relief.

*1. Non-cognizable claims*

Throughout her Complaint, Dr. Gallogly alleges that various defendants infringed rights granted to her by the UNHDR, the preamble to the Constitution, and the Paperwork Reduction Act. However, none of these sources provide rights for which she can sue.

Dr. Gallogly claims defendants have violated her UNDHR rights to work, to free choice of employment, to protection from unemployment, and to freedom from degrading treatment. The UNDHR does not state or create any rights that can be asserted in federal court, and rights proclaimed by the UNDHR are not federal rights under Section 1983. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004) ("[T]he Declaration does not of its own force impose obligations as a matter of international law."); *Dickens v. Lewis*, 750 F.2d 1251, 1254 (5th Cir. 1984) ("individual plaintiffs do not have standing to raise claims under the United Nations Charter and [] other international obligations").

Dr. Gallogly alleges violations of her "domestic tranquility" and "general welfare" rights derived from the preamble of the Constitution. *See* U.S. CONST. pmbl. ("insure domestic Tranquility" and "promote the general Welfare"). Domestic tranquility and general welfare are not federally protected rights, and the Constitution's preamble does not create rights upon which a plaintiff can sue. *See District of Columbia v. Heller*, 554 U.S. 570, 579–80 (2008) (the preamble of the Constitution deals "with the exercise or reservation of powers, not rights"); *see also Jacobson v. Mass.*, 197 U.S. 11, 22 (1905) ("Although that Preamble indicates the general purposes for which the people ordained and established the Constitution, it has never been regarded as the source of any substantive power conferred on the Government of the United States, or on any of its Departments.").

Similarly, Dr. Gallogly's overwhelming paperwork claims under the Paperwork Reduction Act ("PRA"), *see* 5 C.F.R. § 1320 *et seq.*, do not concern a federally protected right. The PRA merely creates a defense to a paperwork demand, it does not create a cause of action that can be asserted in federal court. *See* 44 U.S.C. § 3512; *Smith v. U.S.*, No. 08-10288, 2008 WL 5069783, at *1 (5th Cir. Dec. 2, 2008) ("The Paperwork Reduction Act provides a defense to administrative or judicial enforcement actions, but does not create a private right of action for alleged violations of the statute."); *Ass'n of Am. Physicians & Surgeons, Inc. v. U.S. Dep't of Health & Human Servs.*, 224 F. Supp. 2d 1115, 1129 (S.D. Tex. 2002) ("The PRA does not create a private right of action.").

Because neither the UNDHR, nor the preamble, nor the PRA are sources of federal rights, Dr. Gallogly has failed to state viable claims for relief to enforce these rights. Accordingly, these claims should be dismissed.

2. *Claims against the Lucero Defendants*

In addition to her UNDHR, preamble, and PRA claims, Dr. Gallogly alleges many other claims against the Lucero Defendants under Section 1983. Specifically, Dr. Gallogly asserts the Lucero Defendants violated her due process or equal protection rights by basing her housing eligibility on her open arrest charge, having ineffective and burdensome procedures for maintenance and other complaints, enforcing policies that restrict her freedom of movement into and out of the apartment complex, retaliating against her for making various complaints, and hiring a less qualified candidate than her to work in the office. Dr. Gallogly also alleges they wrongly required her to pay an unmetered water bill, miscalculated her utility bills or income, and misrepresented HUD regulations. Finally, Dr. Gallogly alleges they violated the Texas Penal Code and the Texas Property Code.

Section 1983 protects individuals from deprivations of federal rights caused by a person acting under color of state law. *Bryant*, 597 F.3d at 686. The Lucero Defendants are not state actors. "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). To demonstrate state action, a plaintiff must show "a sufficiently close nexus between the State and *the challenged action* of the regulated entity." *Id*. (emphasis added). Government must have "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [government]." *Id*.  Authorization to perform an action is insufficient, state or federal law must compel the actor for it to be state action.  *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 546–47 (1987).

The Lucero Defendants' accused actions, such as retaliating against her or incorrectly calculating her income, are not acts *compelled* by state or federal law. Therefore, absent government staffing or statutory compulsion, acts by the Lucero Defendants are not state or federal actions. *See Miller v. Hartwood Apartments, Ltd.*, 689 F.2d 1239, 1242–44 (5th Cir. 1982) ("Although HUD regulations do establish the broad guidelines with which the Section 8 lessors must comply, the lessors nevertheless operate the housing complexes on a day-to-day basis and are, in all senses of the word, private owners.").  Additionally, Dr. Gallogly also cannot assert claims against the Lucero Defendants under Section 1983 for violations of the Texas Penal or Property Codes because rights protected by state law are not covered by Section 1983. *Baker*, 443 U.S. at 145–46.  Accordingly, Dr. Gallogly cannot bring claims under Section 1983 against the Lucero Defendants.

### 3. *Equal protection claims*

Dr. Gallogly asserts several unrelated equal protection claims. Related to her Sixth Amendment claims, Dr. Gallogly asserts CAPD violated her equal protection rights by requiring a competency evaluation during the beginning of her menstrual cycle. Compl. at 54. Similarly, she alleges the United States is likewise culpable because "there is no rule of law providing an extension for competency evaluations past the 30-day requirement from order for medical reasons." *Id.* However, as Dr. Gallogly passed her competency exam, despite it occurring during the beginning of her menstrual cycle, she has failed to allege any harm to her from these policies. Accordingly, she has failed to state a claim for relief. *See Lujan*, 504 U.S. at 560–61 (requiring an injury in fact).

Dr. Gallogly also asserts equal protection claims against HUD for its failure to limit community noise and implement regulations that include internet expenses in Section 8 residents' utility allowances and equal protection claims against the EPA and the City of Austin for their respective failures to regulate and implement comprehensive recycling programs for residents in multifamily housing. Compl. at 63-64, 68-70, 72. The Equal Protection Clause requires the government to treat similarly situated persons alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Dr. Gallogly's claims are based on her status as a Section 8 or multifamily housing resident,[7] and her claims fail as a matter of law because *all* public or multifamily housing residents face the same issues she describes—therefore similarly situated persons are treated alike. To the extent she attempts to compare persons in public or multifamily housing to persons not in public or multifamily housing, those groups are not

---

[7] Plaintiff contends domestic tranquility and general welfare are equal protection issues because 48% of subsidized housing members are black and because 75% of subsidized housing members are women. Compl. at 59-60.

similarly situated and there can be no equal protection claim.  Accordingly, Dr. Gallogly's equal protection claims should be dismissed.[8]

### 4. Due process claims

Dr. Gallogly asserts many "due process" claims throughout her Complaint against various defendants.[9]

Dr. Gallogly asserts due process claims stemming from the handling and resolution of her criminal trespass charge, specifically claims against the Travis County Criminal Court for allowing her coerced plea bargain, *see* Compl. at 53-55, and claims against the Travis County District Attorney's office for its stance prohibiting Dr. Gallogly from going on to the University of Texas campus or emailing anyone at the University, *see* Compl. at 55.  However, as Dr. Gallogly acknowledges, these claims also implicate her Sixth Amendment rights. A plaintiff may bring a substantive "due process" claim under the Fourteenth Amendment only if the claim alleged is not susceptible to proper analysis under a specific constitutional source. *See Petta v. Rivera*, 143 F.3d 895, 900-01 (5th Cir. 1998); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989).  Accordingly, these claims will be considered with her other Sixth Amendment claims, *supra*.

Dr. Gallogly alleges several entities violate her due process rights by their failure to regulate or pass legislation.[10]  Specifically, Dr. Gallogly alleges HUD violates her rights by: 1)

---

[8] Even if the Lucero Defendants were found to be state actors, Dr. Gallogly's similar equal protection claims against them would fail for the same reasons.

[9] As discussed above, Dr. Gallogly cannot assert due process claims under Section 1983 against the Lucero Defendants because they are not state actors.  Dr. Gallogly alleges the Lucero Defendants violated her due process rights by: 1) Eureka's policy of limiting housing eligibility based on pending criminal charges, *see* Compl. at 56-57; 2) their procedures for maintenance and other complaints, *see* Compl. at 71, 75; 3) their failure to provide email addresses to resolve disputes or forward complaints to the appropriate email address, *see* Compl. at 88; and 4) their policies, such as the use of and locations of entrances and exits and the use of emergency exits, that restrict her freedom of movement, *see* Compl. at 47-51, 63, 90-91.

its failure to regulate to ensure "due process for having [residents'] rights to domestic tranquility upheld," *see* Compl. at 61, 75; and 2) its failure to include internet access in its utilities allowance, which Dr. Gallogly contends restricts her "freedom of cybermovement," *see id.* at 67-68, 70. Similarly, Dr. Gallogly alleges the City of Austin violates her due process rights by its failure to implement a recycling program, *see id.* at 72, and the EPA violates her rights by its failure to propose and issue comprehensive regulations regarding recycling and sustainability, *see id.* She contends the State of Texas, HUD, and the City of Austin have failed to put in place adequate physical security and safety laws, *see id.* at 63. She also alleges the United States violates her rights by failing to establish a national expunction standard, *see id.* at 57-58, and a national competency examination standard, *see id.* at 54. The court will address these "failure to legislate or regulate" claims together.

From the court's review of Dr. Gallogly's Complaint, Dr. Gallogly has pleaded two additional due process claims. First, Dr. Gallogly alleges that HUD violated her due process rights by its failure to provide email addresses to resolve disputes or forward complaints to the appropriate email address, *see id.* at 82. Second, Dr. Gallogly alleges that the State of Texas's expunction statute violates her due process rights because "an individual completing a jail term for a violent felony has more and swifter expunction rights than Dr. Gallogly serving a probationary term for criminal trespass misdemeanor," *see id.* at 57-58. The court will address these claims in turn.

  a.  Failure to legislate or regulate claims

Dr. Gallogly pleaded many claims that the United States', the State of Texas's, the City of Austin's, and federal agencies' failures to pass and enforce specific laws, ordinances, or regulations constitute a deprivation of her rights.

---

[10] Several of these claims are similar or identical to her equal protection claims.

"[A] plaintiff who seeks to invoke federal judicial power must assert more than just the 'generalized interest of all citizens in constitutional governance.'" *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217 (1974)). To have standing to bring a claim, a plaintiff must have (1) suffered an injury in fact, (2) there must be a causal connection between the injury and the conduct complained of, and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61. "[A]ssertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III . . . ." *Id.* at 576 (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 483 (1982)). "Vindicating the *public* interest . . . is the function of Congress and the Chief Executive." *Id.* Dr. Gallogly's prayer for relief that Congress pass various laws is not a remedy available from federal courts. While courts can address the *deprivation* of an *existing* federal right, they cannot compel legislative bodies to pass new laws.[11]

Regarding federal agencies such as HUD or the EPA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. A court may, to the extent necessary, "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). A court can only "compel an agency to perform a ministerial or non-discretionary act" or "take action upon a matter, without directing how it *shall* act." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (citation omitted). "Thus a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action

---

[11] Dr. Gallogly also states her opposition to a proposed piece of legislation. Courts cannot preemptively block proposed legislation since proposed legislation cannot have deprived anyone of their rights. Nor can courts speculate about the legality of proposed legislation.

that it is *required to take*." *Id.* A plaintiff "cannot seek *wholesale* improvement" of a government program by court order rather than lobbying in the offices of the agency or Congress. *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990)).

Dr. Gallogly has not provided a specific statutory mandate or non-discretionary obligation of HUD or the EPA that the respective agency has failed to act upon. Rather, her complaints seek wholesale improvement of governmental programs. *See, e.g.*, Compl. at 71–72 (complaining about HUD's lack of a comprehensive set of regulations regarding maintenance and accessibility of amenities and the EPA's lack of a "specific and comprehensive" set of regulation for recycling and sustainability). Therefore, the relief Dr. Gallogly seeks cannot be provided by this court and she has failed to state a viable claim for relief.

### b. HUD's failure to provide an email address

Dr. Gallogly alleges that HUD violated her due process rights by its failures to provide email addresses to resolve disputes and to forward complaints to the appropriate email address. Compl. at 82. The procedural aspect of the Due Process Clause requires states to follow fair procedures before depriving someone of their life, liberty, or property. It is only when the state deprives an individual of a "protected interest"—that is, "life, liberty, or property"—that fair procedures are constitutionally mandated. *See, e.g., Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Before a state actor deprives an individual of a protected interest, he must provide notice "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Dusenbery v. United States*, 534 U.S. 161, 168 (2002) (quoting *Mullane*, 339 U.S. at 314).

Despite the characterizations made in her Complaint, Dr. Gallogly's claims do not involve deprivations by HUD of her "life, liberty, or property," nor do HUD's failures to provide

an email address or forward her complaints constitute a denial of the opportunity to be heard. Dr. Gallogly has failed to state a due process claim against HUD on this ground.

      c.   State of Texas expunction code claim

Dr. Gallogly alleges Texas's expunction statute violates her due process rights. Compl. at 57-58. Specifically, she alleges "an individual completing a jail term for a violent felony has more and swifter expunction rights than Plaintiff serving a probationary term for criminal trespass misdemeanor." *Id.* The court first notes that Dr. Gallogly mischaracterizes the Texas expunction statute. *See* TEX. CODE CRIM. P. ART. 55.01. "[A]n individual completing a jail time for a violent felony" is only eligible for expunction if he has been pardoned or "otherwise granted relief on the basis of actual innocence." *Id.* at 55.01(a)(1)(B).

> Additionally, Dr. Gallogly pleaded:
>
> In preparing this complaint and going back through the paperwork, Plaintiff notes that her Community Supervision early release form indicates a change to dismissal, making her possibly eligible for expunction (see Attachment 2). Although, it is unclear whether there is a special dismissal category for probationary terms that only allow for an orders of nondisclosures, and not for expunctions. In the event this is the case, Plaintiff avers such a type of legislation would not pass the laugh test. Plaintiff's ongoing sleep deprivation and torment at Lucero Apartments has interfered with her ability to remember this fact and take appropriate action; furthermore, she cannot afford an attorney.
> . . . .
> Because of the incessant torment of Plaintiff on Lucero Apartments property grounds and her resulting inability to focus, it has just become clear to Plaintiff as of July 4, 2018 in preparing this complaint, that perhaps expunction of her community supervision term is possible because it was commuted to a dismissal. Whereas Plaintiff possesses the capacity to write her own petition for expunction, Plaintiff believes it necessary to keep the file available as evidence during court proceedings for this current civil complaint.

Compl. at 58, 94. Attachment 2 to the Complaint is an "Order Early Releasing Defendant from Deferred Adjudication" and dismissing the charges against her. Compl. at Att. 2. Additionally, the Order provides that Dr. Gallogly, if she is eligible, may file a petition for an order of

nondisclosure immediately.  *Id.*  However, from her Complaint, Dr. Gallogly has not sought nondisclosure or expunction.  Compl. at 58, 94.  Accordingly, she lacks standing to assert she has been constitutionally injured by either statute.  *See Lujan*, 504 U.S. at 560–61. This claim should be dismissed.

### 5. *Fifth and Sixth Amendment claims*

Dr. Gallogly asserts a Fifth Amendment due process claim against the Travis County Criminal Court for allowing her coerced plea bargain.[12,][13]  Compl. at 53-55. Dr. Gallogly's alleged coercion stemmed from the timing pressure she felt to resolve her criminal trespass charge in order to remain eligible for the unit at Lucero.  She pleaded:

> 65. During her July 20, 2016 court hearing, Plaintiff stated to The Court that she wished to go to trial. However, her lawyers advised her behind closed doors in a side conference room that trial would not be completed in time for her to have the case resolved for Eureka Multifamily's July 22, 2016 deadline to reopen her eligibility to take up occupancy in her public housing unit at Lucero Apartments.

> 66. Therefore, Plaintiff signed a plea bargain with a probationary term, stating on record that she felt coerced into the plea bargain based on the timing relative to her housing eligibility. The Judge for Travis County Criminal Court did not ask for details surrounding Plaintiff's stated feeling of coercion, and attempted to make Plaintiff retract her coercion statement before she ruled. Plaintiff did not cooperate with the retraction, and the Judge ruled anyway.

Compl. at 14.

---

[12] The court notes the Travis County Criminal Court is not a legal entity that can be sued.  *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991).  Nor could the presiding judge be sued for his or her role in proceeding, as the judge would be entitled to judicial immunity. *See Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (holding a judge is entitled to judicial immunity when acting in his or her capacity as a judicial officer, "even when the judge is accused of acting maliciously and corruptly").   Nonetheless, the court addresses the claim to the extent it should consider either the State of Texas or Travis County as the intended defendants.

[13] This review most often occurs in the context of a Section 2254 habeas petition.  Dr. Gallogly is not eligible to bring such a petition because she is not in state custody.  28 U.S.C. § 2254(a). Because Dr. Gallogly cannot proceed under Section 2254, if these claims were allowed to proceed, it is unclear whether the court would have jurisdiction over these claims under the *Rooker-Feldman* doctrine, which precludes lower federal court review of state court judgments except when authorized by Congress.  *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 387 (5th Cir. 2017).

When an accused enters a plea of no contest, he waives his right to testify in his own behalf, the right to a jury trial and the right to confrontation.  *Fisher v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978).  A state court may not accept a guilty plea unless the defendant enters it voluntarily and with a complete understanding of the nature of the charge and the consequences of his plea. *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980), modified, 646 F.2d 902 (5th Cir. 1981).  A federal court reviewing a state court plea bargain may only set aside a guilty plea or plea agreement which fails to satisfy due process.  *Frank*, 646 F.2d at 882. If a defendant understands the charges, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea and any concomitant agreement will be upheld on federal review.  *Id.* A plea induced by threats, improper promises, deception, or misrepresentation is not voluntary. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'"  *Fischer*, 584 F.2d at 693 (quoting *Brady v. United* States, 397 U.S. 742, 749 (1970)).

Dr. Gallogly has not alleged that her plea was induced by threats, improper promises, deception, misrepresentations, or any other unconstitutional force.  Rather, she alleges she was "coerced" into the plea from outside pressures, namely her desire to retain her eligibility for Section 8 housing.  She does contend she was denied a trial or forced into a plea by the court, the prosecutor, or her counsel, but merely that she was told a trial could not be completed in time to meet her two-day deadline.  Dr. Gallogly's claim fails as a matter of law.

Dr. Gallogly alleges that her Sixth Amendment right to a speedy trial was violated because there was an almost year-long period between her arrest for criminal trespass and the

resolution of her case, which contributed to her coerced plea bargain.[14]  *Id*. at 11, 12. The Sixth

Amendment right to a speedy trial does apply to state court proceedings, but "[t]he sole remedy

for a violation of the speedy trial right" is "dismissal of the charge." *Betterman v. Montana*, 136

S. Ct. 1609, 1615 (2016). It appears Dr. Gallogly's charges have already been dismissed.

Accordingly, there is no remedy this court can order for the alleged violation of her speedy trial

right. *See* Compl. at Att. 2 (Order Early Releasing Defendant from Deferred Adjudication).

Dr. Gallogly also alleges Burke provided ineffective assistance of counsel as evidenced

by the fact she was able to get her community supervision dismissed after Burke ended his

representation.[15]  Compl. at 53. Dr. Gallogly seeks penalties imposed on Burke by the American

Bar Association. *Id*. at 114. A district court may impose sanctions on abusive behavior before it

through Rule 11 or the inherent powers framework. FED. R. CIV. P. 11 (b)–(c); *NASCO, Inc. v.

Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702-03 (5th Cir. 1990). However, Burke is not

an attorney involved in this litigation before this court. The relief sought by Dr. Gallogly is

therefore not a remedy that can be provided by this court. Dr. Gallogly's Sixth Amendment

claims should be dismissed.

Dr. Gallogly asserts claims against the Travis County District Attorney's Office[16] for its

stance prohibiting her from going on to the University of Texas campus or emailing anyone at

---

[14] The court notes that during this time, Dr. Gallogly's attorney filed a motion to suppress on her behalf, Dr. Gallogly herself filed at least one pretrial motion, and Dr. Gallogly underwent a competency examination.  Compl. at 9, 9-10, 10.

[15] As described in the Complaint, Dr. Gallogly's criminal trespass charge was either a Class A or B misdemeanor, punishable by up to one year in jail (Class A) or up to 180 days in jail (Class B).  TEX. PENAL CODE § 30.05(d); §§ 12.21, 12.22.   "No person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972).

[16] The court notes the Travis County District Attorney's office is not a legal entity that can be sued.  *See Darby*, 939 F.2d at 313-14.  Nor could the prosecuting attorneys be sued for their role in her prosecution as they would be entitled to absolute immunity.  *See Esteves v. Brock*, 106 F.3d 674 (5th Cir. 1997).  Nonetheless, the court addresses the claim to the extent it should consider either the State of Texas or Travis County as the intended defendants.

the University in violation of her right to freedom of movement.[17]  *Id.* at 55.  The right to freedom of movement protects individuals from being stopped by the police without probable cause. *Kolender v. Lawson*, 461 U.S. 352, 360–61 (1983). It also grants individuals the right to travel between states and countries. *United States v. Guest*, 383 U.S. 745, 759 (1966). Additionally, an individual's freedom of movement has not been held to affect whether an individual is allowed to enter a specific building. *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2nd Cir. 2008) ("It would distort the right to free travel beyond recognition to construe it as providing a substantive right to cross a *particular* parcel of land, enter a *chosen* dwelling, or gain admittance to a *specific* governmental building.").[18]  Accordingly, Dr. Gallogly's alleged restrictions are not protected by the right to freedom of movement.

   *6. Conclusion*

   All of Dr. Gallogly's claims against all of the named defendants should be dismissed. Many of Dr. Gallogly's claims assert rights that do not provide a cause of action.  Her remaining claims, as asserted, are based on indisputably meritless legal theories because the grievances she describes are not protected by the claims she asserts.  Additionally, she has named as defendants several entities that either cannot be sued at all or cannot be sued under Section 1983.  Despite the length of her Complaint and the number of grievances asserted, Dr. Gallogly has failed to state a plausible claim on which relief may be granted.

---

[17] The Complaint does not describe the factual or procedural basis for how Dr. Gallogly came to be barred from the University of Texas campus or from emailing anyone at the University.

[18] Were the Lucero Defendants to survive the court's earlier analysis finding they are not state actors, Dr. Gallogly would have no "freedom of movement" claim against them for similar reasons.

### III.    MOTION TO APPOINT COUNSEL

Dr. Gallogly's Motion to Appoint Counsel (Dkt. #3) is also before the court.  In deciding whether to grant the request for appointment of counsel, a court should examine: (1) the efforts taken by the plaintiff to obtain counsel; (2) the plaintiff's financial ability to retain counsel; and (3) the merits of the plaintiff's claims. *Gonzalez v. Carlin*, 907 F.2d 573, 580 (5th Cir. 1990). Courts have also considered a plaintiff's ability under the circumstances of the case to present the case without the assistance of an attorney. *Poindexter v. FBI*, 737 F.2d 1173, 1189 (D.C. Cir. 1984); *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982). A plaintiff has the burden of persuasion with regard to the application.  *Caston v. Sears, Roebuck & Co.*, 556 F.2d 1305, 1310 (5th Cir. 1977). There is no automatic right to the appointment of counsel, but the decision whether to appoint counsel rests within the sound discretion of the trial court. *Id.* at 1309. In general, the circumstances under which a litigant is entitled to counsel are limited. *Lee v. Postal Servs.*, 882 F. Supp. 589, 593 (E.D. Tex. 1995).

Dr. Gallogly states she has been unable to find an attorney to represent her in an unrelated litigation, and she has shown that she is financially unable to retain counsel.  However, as described above, the merits of her claims to not support the appointment of counsel. Additionally, Dr. Gallogly—who holds a Ph.D. in psychology—has shown herself able to sufficiently articulate her claims and represent herself in this lawsuit.  This finding weighs against Dr. Gallogly's request for appointment of counsel. *See Blackman v. Global Indus. Offshore, L.L.C.*, 228 Fed. App'x 410, 411 (5th Cir. 2007) (district court did not err in denying motion for appointment of counsel based on finding plaintiff is "capable of articulating his claims and adequately representing his interests in this case").  Accordingly, Dr. Gallogly's Motion to Appoint Counsel (Dkt. #3) is **DENIED**.

## IV.    MISCELLANEOUS MOTIONS

District Judge Robert Pitman's standing order regarding Court Docket Management only refers motions for appointment of counsel in conjunction with applications to proceed in forma pauperis.   Court Docket Management Order of U.S. District Judge Pitman (Jan. 8, 2015), available here https://www.txwd.uscourts.gov/judges-information/standing-orders/. Accordingly, the undersigned does not have the authority to rule on Dr. Gallogly's Motion for Leave of Court or for Electronic Filing (Dkt. #4) or her Motion to Extend Time (Dkt. #5).

However, because Dr. Gallogly's Sealing Motion (Dkt. #6) and her Motion to Amend Complaint (Dkt. #10) directly relate to the undersigned § 1915(e) review of the Complaint, the undersigned has authority to resolve those motions.   Accordingly, the court **GRANTS** Dr. Gallogly's Sealing Motion (Dkt. #6) and **GRANTS** Dr. Gallogly's Motion to Amend (Dkt. #10). The court has taken note that Dr. Gallogly brings her claims under 28 U.S.C. § 1331 and 42 U.S.C. § 1983.   Given that the undersigned is recommending dismissal of all her claims, there is no need for the Clerk's Office to refile the Complaint with the substituted first page unless the District Judge does not adopt the undersigned's recommendations and instead orders that the Complaint be served.

## V.    ORDER AND RECOMMENDATIONS

The Magistrate Court hereby **GRANTS** Plaintiff's Application to Proceed *In Forma Pauperis* (Dkt. #2), **GRANTS** Plaintiff's Sealing Motion (Dkt. #6), and **GRANTS** Plaintiff's Motion to Amend (Dkt. #10).   The Magistrate Court hereby **DENIES** Plaintiff's Motion to Appoint Counsel (Dkt. #3).   Finally, the Magistrate Court **RECOMMENDS** the District Court **DISMISS** Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

The referral to the Magistrate Judge should now be cancelled.

## VI.      WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED November 19, 2018

_____

MARK LANE
UNITED STATES MAGISTRATE JUDGE